UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE DONALD,

    Plaintiff,                                      Civil Action No. 08-14784

v.                                               HON.  THOMAS L. LUDINGTON
                                                  U.S. District Judge
                                                  HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Janice Donald brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On April 26, 2005, Plaintiff filed an application for DIB, alleging disability as of June 13, 1999 (Tr. 54-56).  After the initial denial of her claim, Plaintiff requested an administrative hearing, held on February 1, 2008 in Flint, Michigan before Administrative Law Judge ("ALJ") Regina Sobrino (Tr. 198).  Plaintiff, represented by attorney Mikel

-1-

Lupisella, testified, as did Vocational Expert ("VE") Michele Robb (Tr. 202-214, 214-217). On February 20, 2008, ALJ Sobrino, denying the DIB claim, found that Plaintiff was capable of sedentary work through the date last insured of December 31, 2005 (Tr. 18, 23). On September 12, 2008, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review of the final decision on November 13, 2008.

## BACKGROUND FACTS

Plaintiff, born February 8, 1957, was 51when the ALJ issued her decision and 48 at her date last insured (Tr. 18, 23, 54). She completed high school, working previously as a desk clerk, cook, dishwasher, janitor, assembler, and reservist (Tr. 70, 77). Her application for benefits alleges disability as a result of carpal tunnel syndrome ("CTS"), tendinitis, foot problems, and arthritis in both knees (Tr. 69).

### A. Plaintiff's Testimony[1]

Plaintiff testified that she currently lived in a single family home in Saginaw, Michigan with her "significant other" (Tr. 202). She reported that she stopped working in June, 1999 following carpal tunnel surgery, adding that a "plant doctor" found she was eligible for Workers' Compensation and disability retirement (Tr. 203).

Plaintiff alleged difficulty walking, standing, and sitting for more than 30 minutes at a time (Tr. 204-205). She admitted that she had not brought a cane to the hearing, but claimed that she used one on a regular basis (Tr. 204-205). Plaintiff, right-handed, alleged

---

[1] Plaintiff's testimony refers to her condition prior to the December, 2005 expiration of benefits unless otherwise indicated.

difficulty with fine manipulations and an inability to lift more than a half gallon of milk (Tr. 205). She also reported that she wore bilateral wrist splints, noting that she experienced hand cramps and difficulty reaching both overhead and forward (Tr. 206-207). She testified additionally that she had trouble bending, crouching and climbing stairs (Tr. 206).

Plaintiff reported that she hired individuals to help her with house and yard work, stating that her neighbors helped her shop for groceries (Tr. 207). She stated that she owned a cat, but denied belonging to clubs or other social organizations (Tr. 207-208). She alleged that foot and leg problems prevented her from driving on a regular basis (Tr. 208). She stated that she wore jogging clothes to avoid problems manipulating buttons or snaps (Tr. 208). Plaintiff denied long trips with the exception of a 2005 cruise to celebrate the 30th anniversary of her high school graduation (Tr. 209). She reported that her pain medication was limited to Tylenol and Advil, adding that a treating physician had advised against additional surgery (Tr. 209-210). She alleged sleep disturbances as a result of limb numbness, also noting that low energy obliged her to nap two or three times every day for up to 60 minutes with her legs elevated (Tr. 211-212). Acknowledging her history of substance abuse (marijuana), she testified that she had been in remission since 2000 (Tr. 212). Plaintiff added that although she had drunk excessively in the past, she now limited her drinking to once or twice a month (Tr. 212-213). She reported that she experienced anxiety only intermittently but that pain created concentrational problems (Tr. 213).

### B. Medical Evidence

**1. Treating Sources**

In March, 1993, A. W. Weiss, Jr., M.D. performed a left carpal tunnel release without complications (Tr. 333). In January, 1999, Jeffrey R. Levin, M.D., reviewing Plaintiff's medical history, found that despite carpal tunnel release on both sides, Plaintiff experienced CTS on the left with denervation (Tr. 184). Plaintiff reported daily numbness, tingling, and pain creating clumsiness and weakness (Tr. 331). In June, 1999, Plaintiff underwent carpal tunnel release on the left without complications (Tr. 320, 325-327). In September, 2000, Dr. Weiss noted that Plaintiff continued to experience hand cramping (Tr. 318). In February, 2000, Dr. Weiss commented that nerve conduction studies suggested left side nerve damage (Tr. 317). However, imaging studies performed later the same month showed "very mild criteria" for CTS on the left (Tr. 315-316).

In June, 2000, Kirk H. Herrick, D.O., noting that Plaintiff experienced manipulative limitations as a result of CTS, "positive Tinel's, positive Phalen's," and "pain and tenderness" of both feet, opined that she was "totally and permanently disabled from her present employment or any type of work" (Tr. 272-273, 282-283). The following month, "Mental Health & Substance Abuse Services" discharge notes indicate that Plaintiff underwent treatment for anxiety and cannabis/alcohol dependence for approximately 16 months before "successfully" completing her treatment plan (Tr. 172, 304-313). On a scale of one to seven, Plaintiff rated her improvement a seven ("much improved") in all categories with the exception of a six in the effect of her therapy on family and friends (Tr. 174-176).

In August, 2004, Andrew H. Cohen, D.P.M. examined Plaintiff's feet, noting

thickened toenails, bilateral hallux valgus and hammertoes, and plantarflexed metatarsals (Tr. 160). Observing hardware placement as a result of previous surgeries, Dr. Cohen discussed padding, palliation, orthopedic shoes, and "repair of her residual foot deformities" (Tr. 159-160). In December, 2004, a stress echocardiogram showed "good exercise capacity" (Tr. 142-143). In September, 2005, Dr. Weiss summarized Plaintiff's history of CTS, noting that she underwent surgeries in 1996 and 1999 (Tr. 117). Plaintiff reported ongoing hand weakness, "dropping things," and sleep disturbances as a result of CTS (Tr. 117). Dr. Weiss, noting that a recent EMG showed only mild CTS on the right, advised against additional surgery, but recommended that she continue taking Motrin and using wrist splints (Tr. 117).

### 2. Consultive and Non-examining Sources

In May, 2000, Edward G. Tava, Ed.D. performed a psychological evaluation of Plaintiff on behalf of the SSA (Tr. 296-301). Plaintiff presented "in a very uncomfortable manner" but "seem[ed] potentially capable of getting along with people" (Tr. 297). Plaintiff volunteered that she generally had coffee and read the newspaper upon arising and spent part of each day feeding the neighborhood cats (Tr. 297). Dr. Tava, assigning Plaintiff a GAF of 55, found that "secondary to her history of substance abuse" she was unable to mange her own funds[2] (Tr. 301). In June, 2000, a Psychiatric Review Technique, acknowledging current substance abuse treatment, found the presence of anxiety, but concluded that

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

Plaintiff's limitations as a result of psychological problems were either minimal or non-existent (Tr. 290, 294-295). Also in June, 2000, a non-examining Physical Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently with an unlimited ability to push and pull (Tr. 275). The Assessment found the absence of postural, visual, communicative, or environmental limitations, finding that Plaintiff was limited to frequent (as opposed to *constant*) handling, fingering, or feeling on the left (Tr. 276-278). The evaluator concluded that Plaintiff's alleged limitations in regard to CTS were fully credible (Tr. 279).

In April, 2004, Plaintiff underwent a physical exam conducted on behalf of "Delphi National Benefits Center" (Tr. 166-171). Joseph Failla, M.D., noting that Plaintiff had "good results" from carpal tunnel release, opined that "she should have good hand function in the future" (Tr. 171). EMG and nerve conduction studies performed the same day showed normal results (Tr. 169-170). Plaintiff demonstrated a mildly impaired range of motion in the neck, right elbow, and wrist (Tr. 168). Her medications were limited to Tylenol and Motrin for hand pain (Tr. 167).

In July, 2005, L.D. Hendricks, D.O. examined Plaintiff on behalf of the Social Security Administration (Tr. 129). Dr. Hendricks noted Plaintiff's history of "multiple surgeries for carpal tunnel syndrome as well as surgeries on her feet for hammer toes and bunions" and arthritis of the knee joints (Tr. 129). Plaintiff, alleging that she was unable to stand or walk for more than ten minutes, reported that chronic foot pain created difficulty walking and swollen ankles (Tr. 129). She also reported finger pain radiating into her arms

and shoulders (Tr. 129). Plaintiff walked with a limp but exhibited no muscle atrophy or swelling in the ankles or knees (Tr. 130).

The following month, a Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and ten pounds frequently with the ability to stand and/or walk for two hours and sit for six hours in an eight-hour workday (Tr. 121). The Assessment found limited pushing and pulling abilities in all extremities (Tr. 121). Her postural limitations consisted of *occasional* climbing, stooping, kneeling crouching, *frequent* crawling, and a preclusion on balancing (Tr. 122). Plaintiff was limited to frequent handling and fingering, but could reach and feel on a constant basis (Tr. 123). The report found the absence of visual or communicative limitations, but noted that Plaintiff should avoid *concentrated exposure* to wetness, avoid even *moderate exposure* to vibration, and avoid all exposure to hazards (Tr. 123-124). The evaluator, noting that Plaintiff's activities of daily living showed "that she is able to take care of her needs and the household," found her claims only "partially credible" (Tr. 125).

### 3. Material Submitted After the February 20, 2008 Administrative Decision[3]

---

[3] Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is

In September, 2007, Plaintiff complained of left knee pain and swelling, reporting that her knee "[gave] out" on her (Tr. 189).

### C.   Vocational Expert Testimony

VE Michele Robb classified Plaintiff's former work as a production laborer as unskilled at the light to medium exertional level[4] (Tr. 106, 214). ALJ Sobrino posed the following hypothetical question assuming Plaintiff's age, education, and work background:

> "[A]ssume an individual who cannot lift, carry, push, or pull more than five pounds frequently and no more than twenty pounds occasionally. Assume that the individual is able to stand and walk two hours in an eight . . . hour workday and sit up to eight hours in an eight hour workday with typical breaks and a lunch break. The person should be able to wear wrist braces while working. Should not need to climb ladders, ropes, or scaffolds, and should not need to kneel, crouch, or crawl. Assume a person who can rarely climb steps and should have railings. Can occasionally stoop. Assume an individual limited to frequent handling, fingering, and feeling. The person should not need to reach overhead. And should not be exposed to hazards or to vibration. there should be no exposure to extremes of temperature or humidity. The person should not need to operate foot or leg controls. Should not need to drive as a work duty. Assume a person limited to doing work that is simple and routine. Would a person with those limitations - - well, a person with those limitations

---

appropriate under the sixth sentence of 42 U.S.C. §405(g).

    Plaintiff does not request a Sentence Six remand. Any issue not raised directly by Plaintiff is deemed waived. *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002). In any case, had Plaintiff had raised this issue, a review of this material indicates that it would not provide grounds for remand.

[4]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

could not do the work Ms. Donald did, is that right?

(Tr. 215). The VE replied that although the above limitations prevented the individual from returning to Plaintiff's former work, the same individual could do the sedentary unskilled work of an information clerk (12,200 positions in the regional economy), inspector (1,800), and general office clerk (12,000) (Tr. 216). The VE stated that the job numbers were consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 216). In response to questioning by Plaintiff's attorney, the VE found that if the individual was further limited by concentrational problems for 20 percent of the time, she would be unable to perform any work (Tr. 217).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Sobrino found that Plaintiff experienced the severe impairments of degenerative joint disease, CTS, and anxiety, finding however that none of the conditions met or medically equaled "one of the listed impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18, 19). She found that Plaintiff retained the following residual functional capacity ("RFC"):

> "to lift, carry, push and pull 5 pounds frequently, 10 pounds occasionally. She was able to stand/walk 2 hours per 8-hour work day and sit up to 8 hours per 8-hour work day. She needed the opportunity to alternate sitting and standing at will. She could not climb ladders, ropes or scaffolds and could rarely climb stairs, with rails. She could occasionally stoop but could not kneel, crouch or crawl. She needed to be able to wear wrist braces. She was limited to frequent (not constant) handling, fingering and feeling. She could not reach overhead. She could not be exposed to hazards or vibrations. She could not operate foot or leg controls, or drive as a work duty. She could not be exposed to extremes of temperature or humidity. She needed to be able to use a cane to walk. The claimant was limited to simple, routine work"

(Tr. 20).  Adopting the VE's job numbers, *supra*, the ALJ found that Plaintiff could perform the jobs of information clerk, inspector, and general office clerk (Tr. 22).

The ALJ supported her non-disability finding by noting that Plaintiff's "allegations of disabling symptoms [were] not fully substantiated," observing that Plaintiff used only over-the-counter medication (Tr. 21).  The ALJ observed that although Plaintiff alleged sleep disturbances, "she [did] not take a medicine to aid sleep" (Tr. 21).  The ALJ also noted that Plaintiff's claims of disability stood at odds with her continued ability to prepare light meals, shop, and drive (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts."  *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health*

*& Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Hypothetical Question

Plaintiff argues that the ALJ ignored key evidence supporting the disability claim. *Plaintiff's Brief,* 6-11, *Docket #18.* Citing *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987), she contends that the hypothetical question's omission of critical limitations taints the VE's job findings. *Plaintiff's Brief* at 6-7. Plaintiff also contends that the ALJ's errors are particularly critical in light of the administrative finding that she was capable of only a limited range of sedentary work. *Id.* at 10 (*citing* SSR 96-9p).

*Varley*, 820 F.2d at 779, sets forth the Sixth Circuit's requirements for a hypothetical question. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments" (internal citations omitted). *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). The hypothetical question must be supported by record evidence. However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)).

The ALJ's hypothetical question to the VE does not present grounds for remand. Plaintiff, citing Dr. Herrick's June, 2000 opinion that Plaintiff was "totally and permanently" disabled (Tr. 272-273, 282-283), contends that treating physician's finding was echoed by the later observations of a consultive examiner. *Plaintiff's Brief* at 8-9. (Tr. 129-130). As such, she contends that the ALJ ought to have adopted Dr. Herrick's finding that she was disabled. *Id.*

However, I note that the August, 2005 consultive examiner did not conclude that Plaintiff experienced problems "writing and holding things," or was unable to perform manipulative tasks for extended periods, but was simply repeating Plaintiff's allegations (Tr. 129). While the July, 2005 consultive examiner acknowledged that Plaintiff experienced "continued weakness of [the] hands," he also observed a normal range of motion in the upper extremities and the absence of muscle atrophy - findings inconsistent with disability as a result of CTS (Tr. 130). Further, as a procedural matter, the ALJ thoroughly discussed her reasons for rejecting Dr. Herrick's finding that Plaintiff was disabled, noting that the treating physician's opinion was undermined by objective tests showing mild or minimal limitations, the lack of muscle atrophy, and Plaintiff's exclusive use of conservative modalities such as wrist splints and Motrin subsequent to the 1999 carpal tunnel release (Tr. 21). *See Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544(6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

I also disagree that Plaintiff's manipulative limitations necessarily prevent her from performing a limited range of sedentary work. *Plaintiff's Brief* at 10. To be sure, SSR 96-9p indicates that "if an individual is unable to perform her past relevant work and the individual is unable to perform the full range of sedentary work, consideration must be given to whether there is other work in the national economy which the individual could perform." *Pompa v. Commissioner of Social Sec.* 73 Fed.Appx. 801, 803, 2003 (6th Cir. 2003)(unpublished)(*citing* SSR 96-9p). In regard to manipulative limitations, the Ruling states that "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity.

As such, "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base."

This argument nonetheless fails. The ALJ's determination that Plaintiff was capable of frequent (but not *constant*) "handling, fingering, and feeling" (Tr. 215) is supported by the August, 2005 Residual Functional Capacity Assessment finding that Plaintiff could handle and finger on a frequent basis[5] (Tr. 123). Next, even assuming that the hypothetical question did not account for Plaintiff's full degree of impairment, she does not explain how the VE's job findings (information clerk, inspector, and general office clerk) would be altered by greater manipulative limitations (Tr. 216). *See* SSR 96-9p (the "mere inability to perform substantially all sedentary unskilled occupations" does not equate with disability). As noted elsewhere in the ALJ's opinion, substantial evidence supports the finding that Plaintiff was capable of "handling, fingering, and feeling" on a frequent basis. Aside from the evidence cited above, the ALJ aptly observed that an April, 2004 exam showed no objective medical evidence supporting Plaintiff's claim of disability level CTS and that she continued to take only over-the-counter pain remedies (Tr. 21).

In closing, I note that while certain portions of the record support Plaintiff's allegations, substantial evidence and even a preponderance of evidence generously supports

---

[5]The hypothetical question actually included greater manipulative restrictions than those found in the August, 2005 Assessment by limiting Plaintiff to frequent, rather constant "feeling" (Tr. 123, 215).

the opposite conclusion. Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen, supra,* and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                    S/R. Steven Whalen
                    R. STEVEN WHALEN
                    UNITED STATES MAGISTRATE JUDGE

Dated: October 28, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 28, 2009.

                    S/Gina Wilson
                    Judicial Assistant